CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA.
FILED
*for* C'Ville
FEB 1 0 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION NO. 3:03cr00025 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| NICHOLAS LANZA, MICHAEL T. LAFERRERA, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is currently before the Court on the defendants' Joint Motion to Dismiss for Improper Venue. In light of the reasons enumerated below, the defendants' Motion is hereby DENIED.

## BACKGROUND

The indictment in this case centers around an elaborate scheme to defraud investors. Two unnamed defendants with the aliases "Joseph Mathis" and "Frank Bigelow" are charged with securities, mail, and wire fraud for allegedly contacting investors in various locations, including Lynchburg, Virginia, fraudulently inducing them to send large sums of money which the defendants claimed would be used to purchase stocks, converting that money to their own use, and sending the investors in return false purchase orders and other documentation purporting to

1

show that the investors' money had been used for its intended purposes. The indictment further charges that the investors' money was deposited into an account at Chase Manhattan Bank in New York. This account was in the name of "Oppenheimer & Co." but it was not actually related to the similarly named securities broker, and it was opened using an altered certificate of incorporation and fraudulent documents. Once in the account, the money was either laundered or paid out to various vendors in order to keep the scheme running. None of the funds sent by investors were used to purchase securities.

The defendants before the court, Nicholas Lanza and Michael T. Laferrara[1] are not charged with participation in the underlying securities fraud. Rather, the indictment charges them with a conspiracy to launder money, in violation of 18 U.S.C. § § 1956 and 1957. "Joseph Mathis" allegedly signed a $68,000 check payable to defendant Michael Laferrara on March 16, 1998, which Laferrera unsuccessfully attempted to cash and then endorsed to one John Cosares. Cosares, who is not charged in this indictment, allegedly deposited the check into his own account and withdrew cash, some of which was paid to Laferrera. In addition, the indictment charges that defendants Testa and Lanza coordinated an arrangement between "Joseph Mathis" and one Frank Sorgente. Pursuant to this arrangement, "Mathis" wrote checks out of the "Oppenheimer" account which were either cashed or deposited at a bank at which Sorgente had an account. The indictment also charges that, in furtherance of the conspiracy to launder money, "Joseph Mathis" opened the "Oppenheimer" account, and "Frank Bigelow" made calls to investors in Lynchburg, Virginia inducing them to send money payable to the "Oppenheimer" account.

---

[1]Defendant Dennis Testa has withdrawn from this motion.

DISCUSSION

Venue issues in criminal cases are not merely procedural, but implicate serious public policy issues. *U.S. v. Barsanti*, 943 F.2d 428, 434 (4th Cir. 1991). The burden is on the government to prove venue by a preponderance of evidence. *Id.* Where the indictment properly alleges venue, however, it would be premature for a district court to dismiss for improper venue. *U.S. v. Gross*, 276 F.2d 816, 819 (2d Cir. 1960); *U.S. v. Ayeki*, 289 F. Supp. 2d 183, 188 (D. Conn. 2003). Under such circumstances, the defendant may await the government's case and move for acquittal if the government has failed to properly prove venue at trial. *Id.*

The venue statute for the conspiracy offenses charged states that venue is proper "in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place." 18 U.S.C. § 1956(i)(2). The government seeks to lay venue in the Western District of Virginia under the second clause of this provision.

Lanza and Laferrera argue that venue is improper in the Western District of Virginia as to the money laundering conspiracy count. The defendants note that all of the overt acts they allegedly committed occurred in New York, and they point out that they are not alleged to have participated in the underlying fraud by which the money was procured. Indeed, they are not alleged to have committed any acts in any way affecting Virginia. Their arguments for dismissal fall roughly into two categories: (1) under *United States v. Cabrales*, 524 U.S. 1 (1998), and its progeny, venue for money laundering cannot be laid in the district where the underlying illicit activity occurred, and (2) the overt acts committed in Virginia were not in furtherance of the

3

scheme to launder money or not sufficiently related to Virginia to lay venue there. The Court will address each of these arguments in turn.

I

The defendants rely on *U.S. v. Cabrales*, 524 U.S. 1 (1998), and its progeny for the proposition that venue in a money laundering case is proper only where the substantive money laundering took place, not where the underlying offense that created the illicit funds occurred. In *Cabrales*, the Supreme Court affirmed the dismissal of money laundering charges based on improper venue in a case with some similarities to the present one. The underlying illegal activity in that case, the sale of drugs, took place in Missouri, but the actual laundering of the sale's proceeds, with which the defendant was charged, took place in Florida. The Court affirmed that venue was not proper in Missouri when the transactions with which the defendant was charged began, continued, and were completed in Florida. *Id.* at 8. In so holding, the Court rejected the government's argument that venue was also proper in the district where the funds were illegally generated; although venue in Missouri might be proper if the government could show the defendant had transported the funds from Missouri to Florida, that was not the case in *Cabrales*. *Id.*

*Cabrales* differs from the instant case in an important respect, however: it dealt with the substantive offense of money laundering rather than a conspiracy to launder money. In *Cabrales,* the Supreme Court explicitly distinguished conspiracy cases, stating, "[n]otably, the counts at issue do not charge Cabrales with conspiracy; they do not link her to, or assert her responsibility for, acts done by others." *Id.* at 7. Hence, the defendants' reliance on *Cabrales* is misplaced,

4

because that case explicitly avoids the issue of venue in a money laundering conspiracy. Indeed, later cases have reaffirmed the traditional rule that venue in a conspiracy case lies where an overt act in furtherance of the conspiracy was committed. *See, e.g., U.S. v. Rodriguez-Moreno*, 526 U.S. 275, 282 (1999) (holding that venue is proper in a district where a co-conspirator carried out overt acts, "even though there was no evidence that the defendant had ever entered that district or that the conspiracy was formed there") (citing *Hyde v. U.S.*, 225 U.S. 347, 356-367 (1912)); *Whitfield v. U.S.*, 543 U.S. 209, 215-18 (2005) (noting that overt acts are not required to show a conspiracy to launder money, but that when an overt act has been committed, venue in a money laundering conspiracy may lie in any district where that overt act was committed). Hence, *Cabrales* and later cases offer no direct support for the defendants' argument.

At oral argument, the defendants sought to relate *Cabrales*' holding to the facts of this case. They argue that because the underlying crime cannot provide venue for the substantive charge of money laundering, acts in furtherance of the underlying fraud, such as soliciting investors in Virginia, cannot provide the basis for venue in a money laundering conspiracy. But this argument is based on an incorrect interpretation of *Cabrales*. The fact that an action forms part of the underlying crime does not immunize it from also forming part of the money laundering conspiracy. *Cabrales* dealt with a situation where the underlying crime and the money laundering were wholly separable. Here, the government alleges that the overt acts touching Virginia furthered both the underlying fraud and the money laundering conspiracy.

Other cases support the proposition that the same overt act can be in furtherance of both an underlying fraud and a money laundering conspiracy. In *United States v. Omoruyi*, 260 F.3d 291, 295 (3d Cir. 2001), the court found that conduct constituting the underlying offense can

5

overlap with conduct constituting money laundering. In *Omoruyi,* the defendant was charged with depositing stolen checks in bank accounts under false names and using false identification to withdraw the money. The court held that these activities both furthered the underlying mail fraud and demonstrated the defendant's "intent to conceal the nature, source, ownership, and control of the proceeds of the mail fraud." *Id.* at 296.

Similarly, in this case a trier of fact could conclude that by asking investors to send checks to the "Oppenheimer" account rather than to the personal accounts of the defendants, the conspirators demonstrated an intent to conceal the source and ownership of the funds and thus took the first step in the money laundering conspiracy as well as furthering underlying fraud. Checks were written out of this account to services used to maintain the fraud, such as Fedex and a mail drop, as well as to dummy corporations, to cash, or to other conspirators including Laferrera.

In addition to *Cabrales*, the defendants also rely on a Fourth Circuit opinion, *United States v. Stewart*. In that case, the court noted that the defendant's money laundering conspiracy conviction was not before it but stated,

> [V]enue in the Eastern District of Virginia arguably would have been improper on the conspiracy count . . . unless, during the venue hearing, the Government was able to forecast some evidence demonstrating that [the defendant], who had, at best, a very minor role in the alleged conspiracy , knowingly and voluntarily entered into a confederacy involving the Eastern District of Virginia.

256 F.3d 231, 241 n.3 (4th Cir. 2001). This statement suggests that the government must make some greater showing than simply alleging a conspiracy in order to survive a motion to dismiss. The government has not succeeded in making this showing, the defendants argue.

Although *Stewart* superficially appears to support to the defendants' position, there are

6

several countervailing factors. One is simply the nature of the statement as dicta, because the Fourth Circuit did not decide the conspiracy count. Another is that *Stewart* was decided before both *Whitfield* and before conspiracy venue provision in section 1956(i) was enacted. In addition and most importantly, the facts of *Stewart* are distinguishable from the instant case. In *Stewart*, the money laundering conspiracy existed and operated solely in California, and the only link to Virginia was that the illicit funds were generated there. The government did not allege that the defendant was responsible for any overt acts committed in Virginia or for the transfer of the funds from Virginia. In contrast, here the government alleges that the fraud conspiracy and the money laundering conspiracy were overlapping and intertwined. As described above, many of the overt acts that formed part of the fraud (such as the creation and use of the "Oppenheimer" account) also appear as overt acts in furtherance of the money laundering conspiracy. Unlike the situation in *Stewart*, then, the alleged money laundering conspiracy here did not exist apart from the underlying criminal activity, but functioned alongside it through some of the same activities.[2] Given these distinguishable facts and the recent Supreme Court holding in *Whitfield*, the Court does not find the court's statement in *Stewart* applicable to this case.

II

The defendants also argue that the connection to Virginia is simply too tenuous to lay venue there. At oral argument, attorneys for the defendants argued that venue could only exist in

---

[2]Indeed, immediately before the citation above, the court stated that venue was improper "[a]bsent charges of aiding and abetting or a showing that Stewart caused or *participated in the overt acts of depositors who were located in the Eastern District of Virginia.*" *Id.* at 241 (emphasis added). Here, the government has alleged just such participation through the defendants' involvement in a conspiracy, overt acts in furtherance of which occurred in the Western District of Virginia.

7

Virginia if the Court accepted the notion that inducing Virginia victims to send checks to the "Oppenheimer" account could constitute an act in furtherance of a money laundering conspiracy.

Accepting that proposition is unproblematic. As described above, inducing the victims to send checks to a fictitious entity's bank account, registered under false names, can easily be seen as a first step in a money laundering scheme. It is irrelevant that the defendants themselves did not do the inducing; that is the essence of a conspiracy. As noted above, the conspiracy need not be formed in a district, and indeed the defendants need not have set foot there, for venue to be proper there. *See U.S. v. Rodriguez-Moreno*, 526 U.S. 275, 282 (1999). Nor does proper venue require a substantial overt act in the district. In *United States v. Al-Talib*, the court noted that acts such as telephone calls to the district were sufficient to establish venue. 55 F.3d 923, 928 (4th Cir. 1995) (citing *U.S. v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994)). Hence, the co-conspirators' calls to Lynchburg are sufficient to establish venue in this case.

Nor does the fact that the "Oppenheimer" account was set up and the victims' checks were mailed up to eight months before the defendants' overt acts defeat venue. The fact that the defendants took no overt acts until mid-March of 1998 does not preclude the existence of a conspiracy in July of 1997. Indeed, the fact that the unnamed co-conspirators set up the "Oppenheimer" account using altered documents and false identification could suggest that a plan to conceal the fraud's proceeds already existed. In addition, it is well established that defendants charged with conspiracy need not know every detail of the conspiracy or all of their co-conspirators, and they may be convicted despite having played only a minor role in the conspiracy. *U.S. v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992). Hence, given that the government has properly alleged the existence of a conspiracy, the argument that the defendants'

8

were only "check-cashers" who participated only to a limited degree does not entitle them to dismissal.

## CONCLUSION

Because the government has properly alleged the existence of a conspiracy to launder money and that overt acts in furtherance of that conspiracy took place in the Western District of Virginia, it would be premature to dismiss for improper venue at this stage of the proceedings. As noted above, however, the government must prove venue at trial by a preponderance of the evidence. At this stage, however, the Joint Motion to Dismiss must be DENIED.

An appropriate order shall issue this day.

ENTERED: _____
U.S. District Judge

February 10, 2006
Date

9